**CORRECTED**
**CORRECTED FOOTNOTE 1**
IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| ERIC MOTE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2024-1257 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

## DEFENDANT-APPELLEE'S INFORMAL BRIEF

Pursuant to Federal Circuit Rules 28(g) and 32, defendant-appellee, the United States, respectfully submits this informal brief and supplemental appendix (with personal identifying information redacted) in response to the informal brief filed by the plaintiff-appellant, Eric W. Mote. *See* Mote Br., February 14, 2024, ECF No. 4-1; *see also* SAppx1-312.[1]

[1] "SAppx" refers to the CORRECTED supplemental appendix filed separately. After the cover page of the supplemental appendix, and the table of contents, are the numbered pages of the the administrative record filed with the trial court. We seek to make review easier for the Court by organizing the numbered pages in the supplemental appendix so that the page numbers match the administrative record page numbers cited in the trial court's opinion. An unnumbered certification of the administrative record was presented to the trial court, but it has been omitted from the supplemental appendix because the certification is not material to Mr. Mote's appeal, and because including the certification would cause the page numbering to not be congruent.

## STATEMENT OF JURISDICTION

Mr. Mote seeks to alter his military records by removing a letter of admonishment (LOA) for disrespect toward a superior officer, and by removing from his military records a non-judicial punishment (NJP) for disrespect toward a superior officer. *See Mote v. United States*, No. 23-84C, slip op. (Fed. Cl. Nov. 28, 2023) (Appx1-26).[2] He also seeks back pay in the amount of a fine associated with the NJP. *Id.*

On November 28, 2023, the United States Court of Federal Claims issued a final decision granting judgment on the administrative record in favor of the United States. *Id.* Judgment was entered the following day. On November 29, 2023, Mr. Mote filed a timely notice of appeal. This Court possesses jurisdiction over an appeal from a final decision of the Court of Federal Claims pursuant to 28 U.S.C. § 1295(a)(3).

There is binding precedent that this Court possesses jurisdiction to review all decisions made by a board for the correction of military records. *Friedman v. United States,* 310 F.2d 381, 396 (Ct. Cl. 1962). This ruling was based upon silence in the statute establishing the correction boards. *Friedman,* 310 F.2d at 396 ("it is far from plain to what extent any judicial review of Correction Board action

[2] "Appx" refers to the pages in Mr. Mote's Addendum to Mr. Mote's Informal Brief, February 14, 2024, ECF No. 4-1 (setting forth the trial court's decision).

was affirmatively intended by Congress. The statute and the legislative materials are not clear, and the arguments can be made both ways."); *see id.* at 403-405 ("Appendix" to the decision discusses the legislative history and the legal implications drawn by the court in *Friedman*); *but see United States v. Testan,* 424 U.S. 392, 399 (1976) (absent congressional authorization for the Court of Claims to consider a claim against the United States, the Court does not possess authority to consider the claim or to grant relief); *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (Congressional consent to suit in the Court of Claims, thereby waiving the sovereign immunity of the United States, must be explicit, and any such statute is strictly construed).

In addition, there is binding precedent that review of a NJP is not barred by the finality provision set forth at 10 U.S.C. § 876. *Dumas v. United States,* 620 F.2d 247, 250 (Ct. Cl. 1980) ("By its own terms, however, the finality provision of Article 76 applies only to court-martial proceedings"); *but see Whitman v. Department of Transportation*, 547 U.S. 512, 514 (2006) (whether general jurisdiction is divested by a specific statutory provision requires scrutiny of the statutory scheme); *Alpine PCS, Inc. v. United States,* 878 F.3d 1086, 1092-1098 (Fed. Cir. 2018) (Tucker Act jurisdiction over contract claims and taking claims divested by more specific statute).

## STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS

Mr. Mote held the rank of Captain in the United States Air Force (Air Force) prior to being separated from service for misconduct. Appx2; SA171 (conviction and dismissal from service on February 2, 2018). Mr. Mote's separation from service occurred after the disciplinary proceedings at issue in this case, and his separation from service is not being challenged in this appeal.

In March 2016, Mr. Mote received a LOA for sending an email containing disrespectful remarks toward a superior officer (Col Jolly). In January 2017, Mr. Mote consented to nonjudicial punishment proceedings, and was found guilty for sending two emails containing disrespectful comments toward a superior officer (Col Jones).

In June 2017, Mr. Mote applied to the Air Force Board for Correction of Military Records (AFBCMR) to remove the LOA and NJP from his records, and for refund of the forfeiture of pay in connection with the NJP. SAppx8 (date); SAppx9-166 (application and exhibits). The AFBCMR ruled that Mr. Mote did not demonstrate by a preponderance of the evidence that he was "the victim of an error and injustice," or that he was the "victim of reprisal." SAppx7. The trial court found that both of these conclusions were supported by substantial evidence, Appx11, and granted judgment on the administrative record in favor of the United States. Appx1-2.

In this appeal, Mr. Mote contends that neither Col Jolly nor Col Jones were entitled to respect. In addition, Mr. Mote alleges that he has demonstrated an affirmative defense based upon the Military Whistleblower Protection Act, 10 U.S.C. § 1034 (MWPA).

## I. Mr. Mote Received Positive Performance Reviews, Including A Positive Review From The Officer Who Later Issued The LOA

Mr. Mote joined the Air Force in 2009, and received good performance reviews. Appx2. The review for the period from March 28, 2014 through March 27, 2015, was signed by Col Scott Jones – a superior officer who later issued the LOA to Mr. Mote in March 2016. SAppx232-233 (review); SAppx47 (LOA); *see* Appx2 (positive reviews from those who later accused Mr. Mote of disrespectful behavior). Furthermore, Mr. Mote's mocking attacks against Col Jones in two emails in January 2017 led to the issuance of the NJP. SAppx126-130.

## II. Mr. Mote Requested A White Heritage Month Special Observance

On October 5, 2015, Mr. Mote applied to the wing commander at Hill Air Force Base, Col Jolly, for the creation of a special observance of White Heritage Month at Hill Air Force Base. Appx2; SAppx3. On October 16, 2015, Col Jolly denied the request, "and explained that [Mr. Mote] failed to provide sufficient information for him to consider it." Appx2 (trial court decision); *see* SAppx30; SAppx103. On October 26, 2015, Mr. Mote filed a Military Equal Opportunity

(MEO) complaint against Col Jolly based upon his denial of Mr. Mote's application. SAppx3.

On or about January 12, 2016, Mr. Mote submitted a second request to Col Jolly for the creation of a 'White Heritage Month" at Hill Air Force Base. Appx2; SAppx3; *see* SAppx32. Mr. Mote asserted that such an observance could increase awareness of common white stereotypes and racial terms such as "redneck" or "hick." Appx2; SAppx103-104. Mr. Mote's application listed approximately 30 potential speakers who could be invited to attend White Heritage Month events at the base. Appx2; SAppx104. Research by Col Jolly's staff determined that some of the proposed speakers were dead, and the rhetoric from some of the remaining proposed speakers "was divisive and would create division at Hill Air Force Base." SAppx104.

On February 4, 2016, Col Jolly denied Mr. Mote's second application after reviewing it with his senior staff. Appx2; SAppx32. Col Jolly decided that the proposed observance would "not encourage positive interaction, promote mutual respect, understanding, teamwork, harmony, pride or esprit de corps among all groups." Appx2-3; SAppx32.

After learning of Col Jolly's decision, Mr. Mote contacted the Equal Opportunity Office at Wright-Patterson Air Force Base, and accused the Air Force of allowing and supporting racial discrimination against white people. Appx3;

SAppx37. Two weeks later, Mr. Mote forwarded his complaint to Col Jolly, with a terse demand: "Please provide me with a complete list of changes I need to make to my application to get White Heritage Month approved." Appx3; SAppx39.

After this email, Mr. Mote met with Col Jones and Col Felt to discuss Mr. Mote's recent behavior. Mr. Mote was advised that he could continue to seek the special observance, but that he should not issue directives to the wing commander to do work for him. Appx3; SAppx41-42.

On March 10, 2016, Mr. Mote sent an email to Col Jolly that both accused Col Jolly of misconduct and mocked Col Jolly. Mr. Mote asked Col Jolly to drop the "dubious and diversionary tactics" and send a memo saying, "I will never approve your application for White Heritage Month because I have chosen to perpetuate my current policy of anti-white discrimination at this installation, so stop asking me." Appx4; SAppx44-45. Col Jolly forwarded this email to Col Jones with a one-word comment: "Inappropriate." Appx4; SAppx104.

## III. The Air Force Issued A Letter Of Admonishment To Mr. Mote

On March 18, 2016, Col Jones issued a LOA to Mr. Mote for being disrespectful to Col Jolly. The letter explained that Mr. Mote had been warned about disrespectful conduct in the recent meeting with Col Jones and Col Felt, and that Mr. Mote's subsequent email to Col Jolly violated Article 89 of the Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 889, which forbids disrespect toward a superior officer. Appx4; SAppx47; SAppx101.

Mr. Mote was given an opportunity to consult with an Air Force lawyer, Captain Hamilton, about the LOA. Captain Hamilton advised Mr. Mote to respond in a respectful tone, but Mr. Mote rejected this advice. Appx4-5; SAppx60. Mr. Mote responded to the LOA by accusing Col Jolly of acts of intimidation, racial discrimination, and dishonesty. Appx5; SAppx49. Mr. Mote also attacked the LOA as an act of reprisal prohibited by the MWPA. Appx5; SAppx50. Mr. Mote further argued that he had a defense for his disrespect toward Col Jolly because Col Jolly's discrimination toward Mr. Mote (by failing to approve his second proposal to create a special observance of White Heritage Month) removed any right that Col Jolly might have had to be treated with respect. SAppx49.

On April 1, 2016, after considering Mr. Mote's response, Col Jones decided that the LOA should remain in effect. Appx5; SAppx48; SAppx102.

Mr. Mote filed a discrimination complaint against Col Jolly, which was found to be unsubstantiated. Appx5; SAppx13 (admission by Mr. Mote).

Mr. Mote filed a reprisal complaint against Col Jones and Col Felt, which was found to be unsubstantiated. Appx5; SAppx13 (admission by Mr. Mote).

Mr. Mote also filed an Inspector General (IG) complaint against Col Jolly, Col Jones and Col Felt, alleging that they had lied in their statements rebutting Mr.

Mote's discrimination allegations against Col Jolly. Appx5; SAppx4; SAppx187-188. The IG complaint was eventually dismissed. Appx6; *see* SAppx165; SAppx175-176; SAppx183.

**IV. <u>Mr. Mote Alleges Discrimination</u>**

Mr. Mote sought to set up a White Heritage booth at a diversity festival in August 2016. Appx6. Col Jones rejected Mr. Mote's proposal because it was not sponsored by an approved organization. Appx6; SAppx82.

Mr. Mote "attended the diversity festival and used the event to stir up trouble among the participants." Appx6 (trial court decision); SAppx84-86.

Mr. Mote then requested that a "CDI" [Commander Directed Investigation] be opened in September 2016 to investigate his allegations that he had been mistreated at the festival. This investigation was closed in November 2016. SAppx288.

On September 16, 2016, Mr. Mote sent an "Application for Redress under Article 138, UCMJ," 10 U.S.C. § 938, to Col Jones demanding that Col Jones confess to three "wrongs against me:" (1) harassing Mr. Mote and discriminating against him as part of a broader anti-White conspiracy at Hill Air Force Base, (2) giving an illegal order limiting Mr. Mote's activities at the Diversity Festival in August 2016, and (3) making false statements in April 2016 during the Equal Opportunity office investigation of Mr. Mote's discrimination complaint against

Col Jolly. SAppx96-98. On September 30, 2016, Col Jones denied Mr. Mote's allegations, and pointed out procedural defects in his complaint. SAppx107-108.

On October 28, 2016, Mr. Mote sent a "Formal Article 138, UCMJ, Complaint" to General Jansson containing the same three complaints about Col Jones, *compare* SAppx110-111 *with* SAppx96-97, and some complaints about the response that Col Jones had made to Mr. Mote's allegations. *See* SAppx111-113. On November 3, 2016, General Jansson notified Mr. Mote that Col Jones was not a "commander" for the purposes of Article 138, and reported that Mr. Mote's complaint had been forwarded to the Administrative Law Directorate at Headquarters Air Force ("AF/JAA"). SAppx116.

On December 6, 2016, Mr. Mote rebuked General Jansson for not following up on Mr. Mote's complaints against Col Jones. SAppx118. On the same day, General Jansson replied that the matter had been referred to the Air Force Office of the Judge Advocate General, Administrative Law Division. *Id.*

## V. <u>**The Air Force Issued A Non-Judicial Punishment To Mr. Mote**</u>

On Friday, January 6, 2017, Col Jones issued a memorandum concerning "Air Force Equal Opportunity (EO) and Sexual Harassment Policy." Appx7; SAppx120. On Monday, January 9, 2017, Mr. Mote sent an unsolicited response to Col Jones, with a copy to General Jansson:

> The Equal Opportunity Zero Tolerance memo you sent out today generated quite a bit of laughter around the

office here. We decided to make a few corrections so the policy would be a little more representative of reality:

The ICBM Systems Directorate strives to maintain an anti-white discriminatory work environment, without regard to how many man-hours it wastes or how detrimental it is to the unit's effectiveness. I am determined to ensure that everyone can discriminate against whites in an environment free of consequences.

I have Zero Tolerance for anyone who alleges unlawful discrimination. Objecting to wrongful conduct, making accusations against my friends, filing complaints against anyone of a higher rank, or drawing attention to my arbitrary disregard for federal regulations and Air Force standards will not be tolerated in any instance.

My "Equal Opportunity" Zero Tolerance policy is just a legal formality that I have to publish from time to time. Mostly I use it to deceive complainants into thinking I have any concern for them or that I will help them resolve issues, when in fact I and my staff will use information reported to me to assist further in the discrimination and harassment efforts that the complainants are already enduring.

If you or any member of your team has been accused of unlawful discrimination, immediately report it to me so I can take reprisal against your accuser and begin preparing false statements to disrupt the investigation so as to prevent any potentially adverse effects to your career.

As Airmen, we must ensure we maintain an environment free of allegations and complaints. By following the guidance in this memorandum, we can make sure all my friends look good in front of their promotion boards and we can prevent horrible problems like honesty, consistency, and sincerity from interfering with our critically important career paths.

> Integrity First – we'll dump the other core values later.

Appx7-8; SAppx122.

Four days later, on January 13, 2017, Mr. Mote sent another email to Col Jones, again with a copy to General Jansson, but this time also copying Mr. Mote's wife, and two other individuals in the Air Force:

> At yesterday's All Call, you didn't seem to understand the reason for the snickering and mumbling from the crowd. Let me explain.
>
> You started out by announcing your "zero tolerance" policies – you don't tolerate this behavior or that behavior. Zero tolerance! Then, a couple slides later, you pulled up the "Diversity & Inclusion Continuum":
>
> Hate – Intolerance – Tolerance – Acceptance – Inclusion
>
> You explained that hate is bad, and that we need to move everything toward inclusion. At this point, people were thinking, "So, where does your *zero tolerance* stuff align on this continuum? Pretty far to the left, yeah?"
>
> You essentially argued that your policies are hateful and illegitimate and should be done away with. That's what people were murmuring about – that you were standing up there as if you were completely unaware of the hypocrisy of your own statement.
>
> That is why your employees don't take this unit seriously. We all put down our work yesterday, drove across the base, piled into an auditorium, and spent an hour listening to a rote recitation of directorate policies that fully contradict each other. When we got back to our desks, we didn't know whether we were supposed to be executing the mission, or lighting a candle, holding

> hands, gazing into each other's eyes, singing kumbaya, and blabbing nebulously about inclusion. Actually, instead of doing either of those, folks mostly sat around mocking and laughing about all of this.
>
> Diversity is all we do! -- excellence is outdated and politically incorrect.

Appx8-9; SAppx124.

On January 17, 2017, General Jansson offered NJP to Mr. Mote based upon the two emails sent by Mr. Mote on January 9th and January 13th. Appx9; SAppx126-130. In accordance with 10 U.S.C. § 815, Air Force regulations, and as offered on standard Air Force Form 3070C, Mr. Mote was given the option to request a court-martial in lieu of accepting the NJP procedures. Appx9; SAppx126.

On January 20, 2017, Mr. Mote's counsel advised Mr. Mote to "fight this in the Article 15 forum" [select NJP proceedings] because Mr. Mote was unlikely to be successful in a court-martial. Appx9; SAppx145; *see* SAppx148 (maximum punishment at the end of a court-martial was two years in jail); *id.* ("Very likely the members would find the email sent by Capt Mote to be disrespectful to a superior commissioned officer. Very unlikely the members would find beyond a reasonable doubt that Col Jones abandoned his status."); SAppx150 ("The emails are unprofessional on their face, and not a protected communication.").

On January 20, 2017, Mr. Mote waived his right to a court-martial, and offered a written presentation in response to the NJP. Appx9-10; SAppx150. Mr. Mote pleaded "not guilty" to the charge of "Disrespect Toward a Superior Officer." Appx9; SAppx132. Mr. Mote characterized the two emails as "protests against the latest iterations of Colonel Jones' misconduct: namely, his dishonest misrepresentation of his own policies." Appx9; SAppx132. Mr. Mote argued that Col Jones was not entitled to respect because of his misdeeds, and Mr. Mote further argued that he should be immune from punishment because his emails were protected by the MWPA. Appx9-10; SAppx132-135.

On January 23, 2017, General Jansson found Mr. Mote guilty of disrespect toward a superior officer, with punishment consisting of a reprimand, and forfeiture of $2,820 in pay. Appx10; SAppx130.

On January 27, 2017, Mr. Mote appealed from the NJP decision. SAppx138-141. Mr. Mote argued that he had a defense based upon the MWPA. SAppx138-139. He also argued that the NJP was improper because Col Jones and General Jansson had not applied anti-discrimination policies consistently, and because the Air Force had not applied Article 89 (disrespect toward a superior officer) consistently. SAppx139-141.

On January 31, 2017, Mr. Mote's appeal was denied by General Jansson. SAppx4. "On 7 Feb 17, the appellate authority also denied the applicant's appeal

and elected to file the Article 15 in his Officer Selection Record (OSR). On 8 Feb 17, the Article 15 was reviewed and determined to be legally sufficient." SAppx4.

On February 13, 2017, Mr. Mote filed a complaint to the Whistleblower Hotline alleging that his NJP was an act of reprisal committed by General Jansson and General Berry. Appx10; SAppx161-163. On April 3, 2017, the IG informed Mr. Mote that his allegations of reprisal were insufficient to warrant an investigation. SAppx159-160. The IG concluded that the two emails on January 9th and January 13th that prompted the NJP were not protected communications. Appx10 at n.4; SAppx161-162.

## VI. <u>Mr. Mote Filed His Application To The AFBCMR</u>

On June 7, 2017, Mr. Mote filed his application to the AFBCMR. Appx10; SAppx8; SAppx9-166 (application, including attachments).

## VII. <u>The AFBCMR Denied Mr. Mote's Application</u>

The AFBCMR considered six exhibits, SAppx8, and denied Mr. Mote's application on August 29, 2018. SAppx1-8. The AFBCMR found "insufficient evidence of an error or injustice." Appx10; SAppx1; SAppx7. Furthermore, the AFBCMR found "insufficient evidence to conclude you were the victim of reprisal in violation of 10 U.S.C. § 1034," and alerted Mr. Mote to his right to "appeal this decision within 90 days of receipt of this letter to the Under Secretary of Defense for Personnel and Readiness." Appx10; SAppx1; *see* SAppx7. In the complaint

filed with the trial court, Mr. Mote did not allege that he had made any appeal to the Under Secretary.

## VIII. The Trial Court Held That The AFBCMR Decision Was Not Arbitrary

The trial court rejected Mr. Mote's arguments. It found that the board's decision was neither arbitrary nor capricious, that substantial evidence supports both the LOA and NJP, and that neither were issued as illegal reprisals. "[T]he LOA and the NJP were issued due to the disrespectful manner in which plaintiff confronted his superior officers and made his complaints and objections, not for the allegations of discrimination or other misconduct." Appx26.

This appeal followed.

# ARGUMENT

## I. Standard Of Review

This Court reviews *de novo* the legal question of "[a] determination of the Court of Federal Claims['] jurisdiction," but "review[s] the Court of Federal Claims' findings of fact relating to jurisdictional issues for clear error." *Biafora v. United States*, 773 F.3d 1326, 1334 (Fed. Cir. 2014).

Decisions of the AFBCMR are reviewed by the United States Court of Federal Claims pursuant to a standard similar to the standard of review in the Administrative Procedures Act (APA). *Skinner v. United States,* 594 F.2d 824, 830 (Ct. Cl. 1979) (whether the presumption favoring the regularity of

administrative actions has been rebutted).[3] This Court reviews the grant or denial of a judgment on the administrative record without deference. *E.g., Sharpe v. United States,* 935 F.3d 1352, 1358 (Fed. Cir. 2019). In other words, this Court applies the same standard of review that is applied by the United States Court of Federal Claims. *Id.*

## II. Informal Brief Form Questions And Answers

### 1. Has the appellant ever had another case in this Court? If so, state the name and number of each case.

In his brief, Mr. Mote represents that he has not had another case in this Court. We are unaware of any other case brought by Mr. Mote in this Court.

### 2. Did the trial court incorrectly decide or fail to take into account any facts?

No.

The trial court found that there was substantial evidence in the administrative record supporting the AFBCMR's two determinations that there was no injustice or error in (1) the Air Force decision to issue the LOA, and (2) the Air Force's decision to issue the NJP. Appx11-15 (LOA); Appx15-20 (NJP).

---

[3] Jurisdiction to review a corrections board decision concerning a NJP pursuant to the Administrative Procedures Act (APA) lies in the district courts. *E.g., Piersall v. Winter,* 435 F.3d 319, 321-325 (DC Cir. 2006). However, in the case of review of a NJP, the district court applies "an unusually deferential application of the 'arbitrary or capricious' standard." *Id.* at 324.

In his informal brief, Mr. Mote contends that he reasonably believed that Col Jolly was dishonest at the time that Mr. Mote sent the email resulting in an LOA. Mote Br. at 4-6. Mr. Mote also argues that he was discriminated against by not being permitted to establish a White heritage booth at a base fair. Mote Br. at 10-11. However, these are not material facts. There were administrative processes for reporting discrimination or dishonesty by Col Jolly or other leadership. Indeed, Mr. Mote filed complaints in such authorized ways. *See* above, at p. 5-14. The email sent to Col Jolly in March 2016 was not such an authorized communication. Instead, it was a rude and mocking email to a superior officer, and the AFCBMR was within its discretion to find that there was no error or injustice in issuing a LOA to Mr. Mote in response to this email. Appx13 (trial court decision).

Similarly, it is not material whether Col Jolly intended to intimidate Mr. Mote, or to discriminate against White people. *See* Mote Br. at 6-8. There are administrative processes for complaining about such misconduct, and Mr. Mote filed such complaints. *See* above, at p. 5-14. The email sent to Col Jolly in March 2016 was not such an authorized communication. Instead, it was a rude and mocking email to a superior officer, and the AFCBMR was again within its discretion to find that there was no error or injustice in issuing a LOA to Mr. Mote in response to this email. Appx13 (trial court decision).

In his informal brief, Mr. Mote asserts that he was treated unfairly at a diversity fair in August 2016, but he fails to make any connection between this treatment and the issuance of either the LOA or the NJP. Mote Br. at 10-11.

In his informal brief, Mr. Mote does not challenge any factual findings concerning the issuance of the NJP in 2017. Instead, he relies upon a purported defense of inadequate legal counsel. Mote Br. at 11-14. Mr. Mote does not cite any legal authority for such a purported defense, nor does he articulate how, or why, any legal advice could have eliminated his liability for two "mocking, reductive, and stridently rude" emails. *See* Appx17 (trial court decision).

The AFBCMR specifically found that Mr. Mote had "failed to establish" that either the LOA or NJP were issued in reprisal for making a protected communication:

> The applicant alleges that he has been the victim of reprisal and has not been afforded full protection nder the Whistleblower Protection Act (10 USC § 1034). The Board notes the applicant filed an IG complaint; however, AFNWC/IG [the Air Force Nuclear Warfare Center Inspector General], reviewed the allegations, and the findings were unsubstantiated, to include alleged reprisal. Nevertheless, in accordance with 10 USC § 1034, the Board reviewed the evidence of record to reach its own independent determination of whether reprisal occurred. Based on the Board's review, they do not conclude the applicant has been the victim of reprisal. The Board states the applicant has failed to establish that that the actions to issue him a Letter of Admonishment (LOA) on 18 Mar 16 or the Non-judicial Punishment (NJP) under Article 15 of the UCMJ imposed on 23 Jan

> 17, are in reprisal for his making a protected communication. Therefore, the Board does not find the applicant has been the victim of reprisal pursuant to Title 10, U.S.C. Section 1034.

SAppx7 (brackets added). The trial court determined that the AFBCMR findings concerning alleged reprisals were supported by substantial evidence in the administrative record. Appx21-26.

In addition, the trial court determined that an objective observer would not conclude that any of the three rude and mocking emails sent by Mr. Mote to superior officers were protected communications within the meaning of the MWPA. *Id.* The two rude emails mocking Col Jones that led to the NJP in 2017 identified no specific evidence of any wrong-doing, SAppx122; SAppx124, and even Mr. Mote's attorney at the time agreed that those emails were not protected communications. SAppx150 ("The emails are unprofessional on their face, and not a protected communication."). The trial court found that Mr. Mote's mocking and strident accusations against Col Jolly in March 2016 would not be considered protected communications by an objective observer. Appx21-23. Furthermore, the trial court found support in the administrative record for the AFBCMR's conclusions that the LOA and NJP were issued because Mr. Mote was disrespectful toward superior officers. Appx26 ("both the LOA and the NJP were issued due to the disrespectful manner in which plaintiff confronted his superior

officers and made has complaints and objections, not for the allegations of discrimination or other misconduct.”).

In his informal brief, Mr. Mote quibbles with the trial court’s descriptions of the evidence, Mote Br. 4-11, but the trial court need only identify substantial evidence – more than a mere scintilla – to support the AFBCMR’s findings. *Biestek v Berryhill,* 139 S.Ct. 1148, 1154 (2019) (“such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.”). It clearly did so here.

**3. Did the trial court apply the wrong law?**

No.

Mr. Mote complains that the trial court should have made certain evidentiary determinations in his favor. Mote Br. at4-10. However, the standard of review “does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence.” *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed. Cir. 1983). When substantial evidence supports a board’s action, and that action is reasonable in light of all the evidence presented, the Court will not disturb the result because it does not sit as a “super correction board[.]” *Van Cleave v. United States,* 70 Fed. Cl. 674, 678-679 (2006).

In his informal brief, Mr. Mote misconstrues the trial court’s citations to *Lachance v. White,* 174 F.3d 1378 (Fed. Cir. 1999). *See* Appx21; Appx26. The

trial held that it was not enough for Mr. Mote to truly believe that he was reporting misconduct for his emails to be protected communications; instead, the emails must be evaluated objectively. *See* Appx21. Mr. Mote construes *LaChance* to mean that any evidence from a source other than Mr. Mote that can be construed as supporting Mr. Mote's belief proves that Mr. Mote's March 2016 email was a protected communication. *E.g.,* Mote Br. at 15-16 (discussing a statement made by Col Felt). That view misunderstands *LaChance*.

Mr. Mote also argues that the trial court applied the wrong legal standard, relative to Article 89 of the UCMJ, 10 U.S.C. § 889, for when an officer is divested of his right to be treated respectfully. *See* Mote Br. at 16-18. The focus of Mr. Mote's discussion is whether Mr. Mote was improperly divested of his right to respect at the diversity festival in August 2016. *Id.* This discussion is irrelevant to whether Col Jolly should have been divested of his right to respect in March 2016, and irrelevant to whether Col Jones should have been divested of his right to respect in January 2017. Thus, Mr. Mote's argument fails to support any defense to either the LOA or the NJP.

Mr. Mote also alleges that the Inspector General erred when conducting an administrative review of his reprisal claims by improperly phrasing the "Acid Test" for whistleblower analysis prior to the proceedings before the AFBCMR. Mote Br. at 18-19. This issue is irrelevant because the AFBCMR did an

independent review of Mr. Mote's reprisal claims, and the AFBCMR found that Mr. Mote failed to establish that either the LOA or the NJP was issued in reprisal for any protected communication. SAppx7.

Mr. Mote attacks the legal implications of a statement in the trial court's decision, and contends that the trial court's statement could be construed as permitting reprisals whenever a protected communication was construed as disrespectful. Mote Br. at 19-20. This argument is also irrelevant. In this case, the AFBCMR found that under the specific facts of this case, neither the LOA nor the NJP was issued in reprisal for a protected communication. SAppx7. The AFBCMR's findings are supported by substantial evidence in the administrative record. Appx21-26.

Mr. Mote next mistakes the AFBCMR's summary of an Air Force report with a finding by the AFBCMR. Mote Br. at 20 (citing "AR6," *i.e.,* SAppx6). He then contends that there are implications that can be drawn from phrases in the trial court's opinion that contradict the purported finding by the AFBCMR. Mote. Br. at 20-21. Mr. Mote's argument lacks merit. Mr. Mote cites Appx25, where the trial court discussed Mr. Mote's allegation *in a communication to the AFBCMR*, at SAppx308, that "Col Jones 'has taken and will take reprisal.'" This was not a finding by the trial court that Mr. Mote had made a protected communication in his rude emails.

Finally, Mr. Mote contends that the NJP was improper because he was denied a Sixth Amendment right to effective counsel in a criminal proceeding. Mote Br. at 21-22. This argument lacks merit for at least two reasons. First, the NJP is not a criminal penalty. *E.g., Dumas v. United States,* 620 F.2d 247, 250 (Ct. Cl. 1980) ("The fundamental character of an Article 15 nonjudicial proceeding, as here, is that it is not a trial by court-martial"). Second, Mr. Mote has not established that his lawyer failed to provide satisfactory legal advice.

**4. Did the trial court fail to consider important grounds for relief?**

No.

In his informal brief, Mr. Mote identifies no new argument in this section. Instead, Mr. Mote merely summarizes arguments made earlier in his brief. *See* Mote Br. at 22-23.

**5. Are there other reasons why the trial court's decision was wrong?**

No.

In his informal brief, Mr. Mote complains that records concerning various administrative proceedings not directly related to the LOA or the NJP were not included in the administrative record before the AFBCMR. Mote Br. at 23. However, it was Mr. Mote's responsibility to present the AFBCMR with relevant

records,[4] and so it was Mr. Mote's error if there were records related to other proceedings that he wanted to cite which were not contained in the administrative record.

Mr. Mote confuses the trial court's discussion of issues raised by Mr. Mote with new rationales for the decision by the AFBCMR. Mote Br. at 24. Mr. Mote's case was not difficult or complicated, and did not require extensive factual findings by the AFBCMR. Mr. Mote wrote disrespectful emails to superior officers that are obviously inconsistent with good order in the military. The AFBCMR had no difficulty determining why the LOA and NJP were issued, and found Mr. Mote's reprisal allegations implausible. *See* SAppx7. The trial court discussed Mr. Mote's contentions in some detail, and explained why those contentions were not persuasive to an objective observer, in light of the administrative record. Appx21-26. Even if the trial court's discussion was more elaborate than necessary under these facts, the trial court determined that the AFBCMR's findings were supported by substantial evidence, and properly granted judgment on the administrative record in favor of the United States.

---

[4] Under the AFBCMR's internal procedures, the burden of proof and responsibility for supplying evidence before the Board lies with an applicant. *See* Department of the Air Force Instruction 36-2603, *Air Force Board for Correction of Military Records* (https://static.e-publishing.af.mil/production/1/saf_mr/publication/dafi36-2603/dafi36-2603.pdf), para. 2.4.

**6. <u>What action do you want the court to take in this case?</u>**

This Court should affirm the trial court's judgment.

CONCLUSION

For the reasons set forth above, we respectfully request that the Court affirm the trial court's judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ James W. Poirier
JAMES W. POIRIER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: 202-598-7547
Fax: 202-305-7644
james.poirier@usdoj.gov

March 27, 2024

Attorneys for Defendant-Appellee