# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## INFORMAL REPLY BRIEF OF PETITIONER/APPELLANT

**Case Number:** 24-1257

**Short Case Caption:** Mote v. US

**Petitioner/Appellant:** Eric Mote

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 15 pages.

You may attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Do not attach material already attached to your informal opening brief. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

1. Have you received a copy of the respondent/appellee's response brief?
   ☑ Yes ☐ No

   **STOP:** You may use this form to respond to arguments raised in the brief of respondent/appellee. If you have not received that brief, you may not file this form. **Do not proceed or file this form if you answered "No."**

2. What are your arguments in response to the respondent/appellee?

   See attached Continuation.

3. Are there other arguments you wish to make? ☐ Yes ☑ No
   If yes, please state them.

Date: 04/16/2024

Signature: /s/ Eric Mote

Name: Eric Mote

## Continuation of Informal Reply Brief, Question 2

*What are your arguments in response to the respondent/appellee?*

The government states:

> Mr. Mote contends that he reasonably believed that Col Jolly was dishonest.… Mr. Mote also argues that he was discriminated against.… However, these are not material facts.… Similarly, it is not material whether Col Jolly intended to intimidate Mr. Mote, or to discriminate against White people. See Mote Br. at 6-8. There are administrative processes for complaining about such misconduct.

Gov. Br. at 18. These facts are material to at least two defenses that Mr. Mote has invoked: Article 89 divestiture, and MWPA protected communication status. In general, the provocation is germane to the subsequent reaction, especially if that reaction is alleged to be criminal misconduct, as in this case.

Moreover, the existence of "administrative processes for complaining" does not render the underlying issues immaterial in every other venue (*e.g.*, before a court). Congress has authorized judicial review of administrative action precisely in case those processes fail.

The government states:

> In his informal brief, Mr. Mote asserts that he was treated unfairly at a diversity fair in August 2016, but he fails to make any connection between this treatment and the issuance of either the LOA or the NJP. Mote Br. at 10-11.

Gov. Br. at 19. In the paragraphs cited here, Mr. Mote is simply rebutting the trial court's finding that he was not discriminated against at the diversity festival.

The connection, as stated elsewhere, is that Colonel Jones' order to Mr. Mote that he not set up a booth at the festival demonstrates misconduct by Colonel Jones and therefore forms a basis for the reasonableness of Mr. Mote's accusations to that effect in later emails (by means of MWPA protection), as well as a basis for divestiture of Colonel Jones' Article 89 protections.

The government states:

> Mr. Mote does not challenge any factual findings concerning the issuance of the NJP in 2017. Instead, he relies upon a purported defense of inadequate legal counsel. Mote Br. at 11-14. Mr. Mote does not cite any legal authority for such a purported defense, nor does he articulate how, or why, any legal advice could have eliminated his liability…

Gov. Br. at 19. In his original complaint to the trial court, Mr. Mote cited the Sixth Amendment as a basis for his right to effective legal counsel. Compl. at 12. Additionally, even the trial court acknowledged at least some right to counsel when it quoted the Article 15 documents as saying: "You have the rights listed on Page 3 under 'Rights of member.' Including the right to consult a lawyer before making any decision, and to have a lawyer assist you throughout the proceedings." Appx0018-0019.

The government's insinuation that an accused is entitled to counsel only if he can articulate how it "could have eliminated his liability" has no basis in American jurisprudence.

The government states:

> Mr. Mote quibbles with the trial court's descriptions of the evidence, Mote Br. 4-11, but the trial court need only identify substantial evidence – more than a mere scintilla – to support the AFBCMR's findings. *Biestek v Berryhill*, 139 S.Ct. 1148, 1154 (2019) ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Gov. Br. at 21. The government wrongly argues that a fact-finding standard ("more than a mere scintilla") precludes a reviewing court from considering the higher-level questions of how the evidence should be interpreted and characterized.

The evidentiary standard given in Biestek is not particularly applicable to the present case, as Biestek examined whether a factual claim by a witness (namely, that certain types of jobs were available in the economy in certain quantities) could be relied upon by an administrative agency, even if that witness declined to produce supporting documentation.

The present case, on the other hand, contains very few disagreements over the raw empirical facts. Rather, the disputes here are primarily in the form of whether the given facts meet certain legal characterizations (*e.g.*, whether Mr. Mote's emails were protected communications, whether Article 89 divestiture applied under the circumstances, whether he was given effective legal counsel, and so forth). In other words, the controversy is about how the evidence should be interpreted, thus it is a somewhat different category of dispute than a mere fact-finding query in which the "more than a mere scintilla" standard would apply.

The government states:

> Mr. Mote complains that the trial court should have made certain evidentiary determinations in his favor. Mote Br. at4-10. However, the standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983).

Gov. Br. at 21. As before, the government conflates its categories. This is not a fact-finding, evidence-weighing debate about the existence of certain medical conditions in certain degrees of severity, as in Heisig.

Mr. Mote does not ask the court to reweigh evidence as to its truth value. (This issue is actually moot, as the Board did not particularly challenge the truth value of any of Mr. Mote's evidence.) What is at stake, however, is the interpretation of the evidence, and this is well within the court's authority to consider. Indeed, the trial court expressed its standard of review as follows: "Under the arbitrary and capricious standard, the court considers 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Appx0020.

A thorough review of the Board's rationale for its findings and the quality of its judgment is all that Mr. Mote has requested and is exactly what the government now seeks to characterize as "a reweighing of the evidence" under Heisig.

The government states:

> Mr. Mote construes LaChance to mean that any evidence from a source other than Mr. Mote that can be construed as supporting Mr. Mote's belief proves that Mr. Mote's March 2016 email was a protected communication.

Gov. Br. at 22. Mr. Mote never claimed his belief was reasonable simply by virtue of its being shared by *any* external source. Rather, he showed that each source he cited was disinterested, and in some cases antagonistic—an even higher threshold. The government attempts no justification for its claim that Mr. Mote's sources were not disinterested.

The government states:

> The focus of Mr. Mote's discussion is whether Mr. Mote was improperly divested of his right to respect at the diversity festival in August 2016. Id. This discussion is irrelevant to whether Col Jolly should have been divested of his right to respect in March 2016, and irrelevant to whether Col Jones should have been divested of his right to respect in January 2017. Thus, Mr. Mote's argument fails to support any defense to either the LOA or the NJP.

Gov. Br. at 22. The divestiture question at the diversity festival in August 2016 is relevant to Mr. Mote's January 2017 emails and subsequent NJP. Mr. Mote had been advised by apparently competent legal authority that Article 89 divestiture was properly triggered by such bases as "being annoying." He relied upon this explanation of Article 89 in his later emails to Colonel Jones. This substantiates, at the very least, a mistake-of-law defense, which Mr. Mote set forth in his original complaint to the trial court (see Compl. at 11) as follows:

> A mistake-of-law defense exonerates Plaintiff, as he was clearly instructed by Air Force officials, not only in writing but over against his own protests,

> that communicating disrespect to superior officers was justifiable even for the most miniscule provocations.

The government does not attempt to reconcile the disparate applications of Article 89 divestiture as concerning Mr. Mote, nor has it ever disputed or rebutted the validity of this defense.

The government states:

> Mr. Mote also alleges that the Inspector General erred when conducting an administrative review of his reprisal claims by improperly phrasing the "Acid Test" for whistleblower analysis prior to the proceedings before the AFBCMR. Mote Br. at 18-19. This issue is irrelevant because the AFBCMR did an independent review of Mr. Mote's reprisal claims, and the AFBCMR found that Mr. Mote failed to establish that either the LOA or the NJP was issued in reprisal for any protected communication.

Gov. Br. at 22-23. The issue is relevant for several reasons. First, the Board did not explicitly reconduct the Reprisal Acid Test in any visible way that would allow its methodology to be examined or questioned. Second, the IG had already stated that Mr. Mote's email was a protected communication. If the Board was overturning that analysis, it needed to state that clearly and justify its case. Third, even if the Board had properly reconducted the test and explained why it changed the IG's analysis in a way unfavorable to Mr. Mote, the fact remains that Mr. Mote, in the meanwhile, relied on the IG's statement that his communication was protected. If the IG is deemed to be wrong about the protected status of the email, Mr. Mote again pleads mistake of law, as he was misled by the IG about whether such emails were protected, and this error informed his subsequent decision to send

the January 2017 emails. Conversely, if the IG is deemed to be correct as to Question 1 of the test (*i.e.*, Mr. Mote's email *is* considered protected), then the IG's erroneous answer to Question 4 has to be explained.

The government states:

> Mr. Mote attacks the legal implications of a statement in the trial court's decision, and contends that the trial court's statement could be construed as permitting reprisals whenever a protected communication was construed as disrespectful. Mote Br. at 19-20. This argument is also irrelevant.

Gov. Br. at 23. That a trial court has substantially nullified the Military Whistleblower Protection Act is highly relevant to anyone invoking legal protection under that legislation.

The government states:

> Mr. Mote next mistakes the AFBCMR's summary of an Air Force report with a finding by the AFBCMR. Mote Br. at 20 (citing "AR6," i.e., SAppx6).

Gov. Br. at 23. The government seems to suggest that the advisory opinion by AFLOA/JAJM was not adopted by the Board, despite the fact that the Board copied and pasted the exact wording into its findings without quotation marks. (Compare AR303 and AR6.) The statement cited by Mr. Mote which the government now identifies as erroneously ascribed to the Board's findings is this: "Moreover, the emails do not allege a violation of law or regulation."

In other words, the government here contends that it was *not* the finding of the Board that Mr. Mote's emails failed to allege a violation of law or regulation. The

Board ignored so many issues and failed to articulate its reasoning on so many other points that it barely pretended to carry out its function. And now, what little work the Board performed via copy and paste, the government wants to strip away. In effect, the government wishes the Board to have said nothing at all so that the trial court could serve as a "super correction board" and generate all rationale on its behalf.

If the theory is granted that the Board did not find what it found, Mr. Mote is still entitled to relief because the Board failed to arrive at any conclusion and the trial court improperly substituted its findings for the Board's.

The government states:

> Mr. Mote cites Appx25, where the trial court discussed Mr. Mote's allegation in a communication to the AFBCMR, at SAppx308, that "Col Jones 'has taken and will take reprisal.'" This was not a finding by the trial court that Mr. Mote had made a protected communication in his rude emails.

Gov. Br. at 23. The claim here seems to be that the trial court did not admit that Mr. Mote alleged any violations of law or regulation. However, its findings clearly acknowledge the *existence* of allegations while seeking to undermine the *reasonability* of the belief in the allegations.

As originally demonstrated, the trial court referenced "the wrongs that plaintiff alleged" (Appx0025) and found that "Plaintiff's allegations of false official statements and racial discrimination are linked." Appx0024. (See Mote Br. at 20.) Mr. Mote cited this as proof that the trial court acknowledged allegations of

wrongdoing, contra the Board's finding that no allegations were made. AR6. Thus the trial court found that the Board erred, yet it granted Mr. Mote no relief from that error, but substituted its own opinion for the Board's and made itself a "super correction board."

The government states:

> Finally, Mr. Mote contends that the NJP was improper because he was denied a Sixth Amendment right to effective counsel in a criminal proceeding. Mote Br. at 21-22. This argument lacks merit for at least two reasons. First, the NJP is not a criminal penalty. *E.g., Dumas v. United States,* 620 F.2d 247, 250 (Ct. Cl. 1980) ("The fundamental character of an Article 15 nonjudicial proceeding, as here, is that it is not a trial by court-martial"). Second, Mr. Mote has not established that his lawyer failed to provide satisfactory legal advice.

Gov. Br. at 24. Mr. Mote addressed this in his principal brief. The time at which Mr. Mote's legal counsel was inadequate was prior to his acceptance of the Article 15 forum. Indeed, it was his counsel's analysis of whether to accept an Article 15 which was both untimely and ineffective. He cannot be within the Article 15 forum at the same time that he is deciding whether to enter the Article 15 forum. The government offers no rebuttal to this point and fails to cite any precedent suggesting a military member loses Sixth Amendment rights merely by being *offered* an Article 15.

As to the second point, Mr. Mote has argued that his counsel was ineffective. The government mechanically denounces the claim but never grapples with the

merits of the argument and ventures no theory as to why the ineffective counsel Mr. Mote received was actually effective.

The government states:

> Mr. Mote complains that records concerning various administrative proceedings not directly related to the LOA or the NJP were not included in the administrative record before the AFBCMR. Mote Br. at 23. However, it was Mr. Mote's responsibility to present the AFBCMR with relevant records, and so it was Mr. Mote's error if there were records related to other proceedings that he wanted to cite which were not contained in the administrative record.

Gov. Br. at 24-25. The records whose omission from the administrative record Mr. Mote objected to were "the applications for White Heritage Month, the MEO discrimination complaint and findings, and the CDI complaint and findings." Pl.'s Cross-Mot. and Rep. to Def.'s Mot. for J. on the Administrative R. at 6. These were official government records that Mr. Mote believed were already part of the administrative record and had been considered by the Board. Only upon receiving a copy of the administrative record during proceedings in the trial court did he become aware that these documents were not present, at which time he stated his objection.

The government cited the omission of these documents as a basis for its argument before the trial court:

> The AFBCMR took note (from computer records) that Mr. Mote filed a MEO complaint against Col. Jolly for denying his first proposal, A3, but Mr. Mote did not present any copy of this MEO complaint to the AFBCMR, nor argue the contents of that MEO complaint to the AFBCMR. In summary,

> there is no evidence in the record to support any contention that Col. Jolly's decision in October 2015 was based upon anti-White discrimination or dishonesty.

Def. Mot. for J. on the Administrative R. at 25-26. Because the government made these omissions relevant to its case and noted the Board was aware of their existence at the time of its review, the Board improperly disregarded them. For the government to fail to consider its own records and then plead upon such failure is unreasonable.

The government states:

> Even if the trial court's discussion was more elaborate than necessary under these facts, the trial court determined that the AFBCMR's findings were supported by substantial evidence, and properly granted judgment on the administrative record in favor of the United States.

Gov. Br. at 25. The government seemingly concedes here that the trial court went well beyond the Board's findings. Indeed, the court did not merely bolster arguments that were already present but perhaps not fleshed out. Rather, it manufactured conclusions and rationale that were never remotely set forth by the Board. In some instances, the court *changed* the Board's conclusions and issued contradictory findings (*e.g.,* as to whether Mr. Mote alleged violations of law). Or, when the court tired of generating explanations on behalf of the Board, it simply swept any remaining discrepancies under the rug of, "The Board came to a conclusion after a holistic review of all of plaintiff's claims." Appx0015. Which is

to say the Board may conclude whatever it likes without providing any justification. But this is the definition of "arbitrary and capricious."

In conclusion, Mr. Mote respectfully petitions this Court to vacate the judgment of the trial court and grant all corresponding relief that is lawful under the circumstances.

*/s/* Eric Mote
Eric Mote
April 16, 2024